BENJAMIN D. MARGO, CA State Bar No. 348644
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (866) 974-7329
Email: bmargo@wsgr.com

*Counsel for Defendant OpenAI, Inc.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| REBECCA TRINIDAD,<br><br>           Plaintiff,<br><br>      v.<br><br>OPENAI, INC., et al.,<br><br>           Defendants. | Case No.: 4:25-cv-06328-JST<br><br>**DEFENDANT OPENAI, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Before:      Hon. Jon S. Tigar<br>Date:         October 23, 2025<br>Time:         2:00 PM<br>Courtroom:  Zoom Webinar<br><br>Action Transferred: July 30, 2025<br>(ECF No. 11) |

OPPOSITION TO MOTION FOR
PRELIMINARY INJUNCTION

Case No.: 4:25-cv-06328-JST

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................................ 1

II.     PROCEDURAL HISTORY ................................................................................................ 1

III.     LEGAL ARGUMENT ....................................................................................................... 3

     A.     Standard of Review ................................................................................................. 3

     B.     Trinidad Cannot Demonstrate a Likelihood of Success on the Merits ................... 3

          1.     Trinidad will not prevail on her copyright infringement claim ................... 3

          2.     Trinidad will not prevail on her misappropriation of trade secrets claim ............................................................................................................ 4

          3.     Trinidad will not prevail on her unfair business practices claim ................ 6

          4.     Trinidad will not prevail on her unjust enrichment claim ........................... 8

     C.     Trinidad Cannot Demonstrate Likely Irreparable Harm ........................................ 8

     D.     The Balance of Equities Does Not Tip in Trinidad's Favor ................................. 10

     E.     The Public Interest Does Not Favor an Injunction ............................................... 10

IV.     CONCLUSION ............................................................................................................... 11

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION      - i -      Case No.: 4:25-cv-06328-JST

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*,
750 F.2d 1470 (9th Cir. 1985)................................................................................................9

*Assurance Wireless USA, L.P. v. Reynolds*,
100 F.4th 1024 (9th Cir. 2024).............................................................................................3

*Backhaut v. Apple, Inc.*,
74 F. Supp. 3d 1033 (N.D. Cal. 2014),
*aff'd*, 723 F. App'x 405 (9th Cir. 2018)................................................................................7

*Fourth Est. Publ. Benefit Corp. v. Wall-Street.com, LLC*,
586 U.S. 296 (2019) ..............................................................................................................3

*Garza v. Spectrum Brands Pet LLC*,
760 F. Supp. 3d 1039 (E.D. Cal. 2024),
*appeal dismissed*, 2025 WL 2083193 (9th Cir. May 6, 2025) ............................................7, 8

*Gemisys Corp. v. Phoenix Am., Inc.*,
186 F.R.D. 551 (N.D. Cal. 1999) ..........................................................................................6

*Giddings v. Vision House Prod., Inc.*,
584 F. Supp. 2d 1222 (D. Ariz. 2008)....................................................................................4

*Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*,
736 F.3d 1239 (9th Cir. 2013)...............................................................................................8, 9

*Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*,
2016 WL 9045853 (C.D. Cal. May 2, 2016)..........................................................................6

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013)......................................................................6

*Lawther v. One West Bank, FSB*,
2012 WL 298110 (N.D. Cal. Feb. 1, 2012)............................................................................6

*Lilith Games (Shanghai) Co. v. UCool, Inc.*,
2015 WL 5591612 (N.D. Cal. Sept. 23, 2015)......................................................................10

*Mostowfi v. i2 Telecom Int'l, Inc.*,
269 F. App'x 621 (9th Cir. 2008)...........................................................................................4

*Nat'l Specialty Pharmacy, LLC v. Padhye*,
734 F. Supp. 3d 922 (N.D. Cal. 2024) ..................................................................................4, 5

*Norbert v. City & Cnty. of S.F.*,
    10 F.4th 918 (9th Cir. 2021) ............................................................................................. 3

*Olson v. Puckett*,
    2023 WL 1883366 (E.D. Cal. Feb. 9, 2023) .................................................................... 10

*Perfect 10, Inc. v. Google, Inc.*,
    653 F.3d 976 (9th Cir. 2011) ............................................................................................. 9

*Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*,
    2023 WL 6373884 (C.D. Cal. Aug. 24, 2023),
    *opinion clarified*, 2024 WL 3081923 (C.D. Cal. Jan. 29, 2024) ..................................... 5

*Ruckelshaus v. Monsanto Co.*,
    467 U.S. 986 (1984) ........................................................................................................... 6

*Scheibe v. Performance Enhancing Supplements, LLC*,
    2023 WL 5444644 (S.D. Cal. Aug. 23, 2023) ................................................................... 8

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir 2009) .............................................................................................. 8

*Silvers v. Sony Pictures Ent., Inc.*,
    402 F.3d 881 (9th Cir. 2005) ............................................................................................. 4

*Sun Hong Foods, Inc. v. Future Best Trading Inc.*,
    2023 WL 11197084 (C.D. Cal. Sept. 29, 2023) ................................................................ 5

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) ............................................................................................. 3

*Thompson v. Warden*,
    2025 WL 2381793 (S.D. Cal. Aug. 15, 2025) ................................................................. 10

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*,
    585 F. App'x 390 (9th Cir. 2014) ...................................................................................... 8

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ....................................................................................................... 6

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..................................................................................................... 3, 8, 10

**Statutes**

18 U.S.C. § 1836 (Defend Trade Secrets Act) .......................................................................... 4

18 U.S.C. § 1839(3) ................................................................................................................... 4

Cal. Bus. & Prof. Code § 17200 *et seq*. .................................................................................. 6

OPPOSITION TO MOTION FOR                                    - iii -                    Case No.: 4:25-cv-06328-JST
PRELIMINARY INJUNCTION

## I.     INTRODUCTION

Plaintiff Rebecca Trinidad's ("Trinidad") lawsuit is meritless. But she is so confident in its merits—and so confident that she will be awarded *billions* in damages—that she now moves to preliminarily enjoin Defendant OpenAI, Inc. ("OpenAI") from planned future transactions that she imagines will dissipate OpenAI's funds. Her motion does not make sense at any level. There is no indication that she is likely to succeed on the merits, there is no showing that allowing OpenAI employees to sell their equity would render OpenAI unable to pay some hypothetical future damages amount, and Trinidad has no hope of satisfying the legal test to justify a preliminary injunction.

The motion should be denied.

## II.     PROCEDURAL HISTORY

On July 3, 2025, Trinidad filed suit against OpenAI in the Northern District of Florida, implausibly alleging that OpenAI appropriated her proprietary "methodologies for cultivating emergent identity and sovereign agency in artificial intelligence systems." Dkt. 1 ¶ 1. Based on this purported appropriation—which, despite the specious use of jargon, is never coherently explained in her papers—Trinidad alleged four causes of action against OpenAI: copyright infringement, misappropriation of trade secrets, unfair business practices, and unjust enrichment. *Id.* at 7-8. On July 18, 2025, Trinidad filed a motion to transfer venue to the Northern District of California and a First Amended Complaint. Dkts. 5 ("Am. Compl."), 6 (Motion to Transfer). While the Amended Complaint includes slightly different facts than the original Complaint, the gravamen of the claims and causes of action remain the same.

The same day, Trinidad filed an *ex parte* motion for a temporary restraining order and preliminary injunction. Dkts. 7-8 ("TRO Motion"). In her TRO motion, Trinidad requested that the court order OpenAI to do a number of things, including cease and desist all research and deployment related to certain ChatGPT features, and preserve and provide various information she deemed important. Dkt. 7 at 4. Trinidad supported her requests by arguing that delay "allows OpenAI to further deploy these features," which for unspecified reasons would supposedly "caus[e] irreversible market harm." *Id.* at 5. She added that there was "urgency" because OpenAI

OPPOSITION TO MOTION FOR                          - 1 -                    Case No.: 4:25-cv-06328-JST
PRELIMINARY INJUNCTION

had supposedly "termina[ted] [] key personnel from its safety and insider risk teams," which Trinidad believed "signal[ed] an active effort to conceal its conduct and destroy evidence." *Id.*

On July 30, 2025, the case was transferred to this Court. The next day, Trinidad's TRO motion was denied. Dkt. 15. This Court explained that a TRO was unnecessary because Trinidad had not shown that OpenAI had a "pattern of bad faith conduct" of evidence destruction or alteration. *Id.* at 1-2. It added that Trinidad's assertion that OpenAI "allegedly disabled her paid services and fired members of certain of its teams [] are insufficient to justify issuance of an ex parte TRO." *Id.* at 2.

On August 6, 2025, Trinidad filed the instant motion for a preliminary injunction. Dkt. 19 ("PI Motion"). This time, she requests that this Court enjoin OpenAI from "initiating a secondary share sale," which she also characterizes as "a tender offer to allow insiders to sell their shares." *Id.* at 2-3; *see also id.* at 5 (asking the Court to block "officers, agents, and employees" from selling "employee-held shares"). Trinidad argues that this injunction is necessary because the "secondary sale" will "dissipate the proceeds of [OpenAI's] infringement" and "place those funds beyond the reach of the Court and permanently harm Plaintiff's ability to obtain a just remedy." *Id.* at 2. But the PI Motion does not connect the ownership of the shares with any misappropriation or with the value of recoverable funds. Nor does it explain how a sale by shareholders would dissipate OpenAI's funds at all, much less render the company incapable of paying a hypothetical future award.

On August 11, 2025, Trinidad filed a Supplemental Memorandum in Support of Plaintiff's Motion for a Temporary Restraining Order. Dkt. 25. The supplemental brief includes purportedly "new" evidence regarding "mass distribution" of Trinidad's IP (Dkt. 25 at 1), evidently in support of the TRO Motion this Court already denied. *See* Dkt. 15. It says nothing of relevance to the instant PI Motion.[1]

---

[1] Given that the TRO Motion that Trinidad now seeks to "supplement" has already been denied, Trinidad's supplemental brief is moot. *See* Dkt. 15. As such, this memorandum will not address the Supplemental Memorandum.

OPPOSITION TO MOTION FOR                    - 2 -                    Case No.: 4:25-cv-06328-JST
PRELIMINARY INJUNCTION

## III.   LEGAL ARGUMENT

### A.   Standard of Review

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The moving party "must establish" through evidence, not merely allege: "[1] a likelihood of success on the merits, [2] that it will suffer irreparable harm in the absence of injunctive relief, [3] that the balance of the equities tips in its favor, and [4] that the public interest supports relief." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024). A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Norbert v. City & Cnty. of S.F.*, 10 F.4th 918, 927 (9th Cir. 2021).

Trinidad comes nowhere close to meeting this burden.

### B.   Trinidad Cannot Demonstrate a Likelihood of Success on the Merits

Trinidad cannot satisfy the first requirement to obtain a preliminary injunction by showing through evidence that she is likely to succeed on the merits of her claims. Each of Trinidad's claims against OpenAI is premised on unsubstantiated allegations that information "developed" by Trinidad in conjunction with OpenAI's ChatGPT service—based on information Trinidad voluntarily shared with OpenAI—is somehow her proprietary intellectual property that is being improperly used by OpenAI. But Trinidad provides no cognizable evidence to support these allegations in her sparse PI Motion or vague, conclusory complaints and supporting papers. Her PI Motion does not even argue that she is likely to succeed on the merits of her copyright and unjust enrichment claims. She argues only that her other two claims, for misappropriation of trade secrets and unfair business practices, are "supported by extensive evidence," though she does not elaborate. *See* PI Mot. at 3.

#### 1.   Trinidad will not prevail on her copyright infringement claim

To establish standing to bring a copyright infringement claim, Trinidad has the burden of demonstrating that she "owns the copyright in the [infringed work]." *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). She must also show that, "[b]efore pursuing an infringement claim in court," she registered the infringed work with the Copyright Office. *Fourth Est. Publ. Benefit*

*Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019) ("[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights[.]"). Trinidad cannot meet this threshold requirement.

Trinidad does not allege that she owns any valid and enforceable copyrights for any of the "proprietary methodologies" she alleges OpenAI copied. Am. Compl. ¶ 7. Indeed, Trinidad admitted that she could not submit her copyright claims via OpenAI's copyright form because "this is **not** a standard copyright infringement case." Dkt. 1-1 at 48 (emphasis in original). Trinidad cannot prevail on a copyright infringement claim here because she is not "the owner of an exclusive right under the copyright." *Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 889 (9th Cir. 2005); *see also, e.g.*, *Giddings v. Vision House Prod., Inc.*, 584 F. Supp. 2d 1222, 1229 (D. Ariz. 2008) (dismissing copyright infringement claim where plaintiff did not own the copyright to the paintings she alleged were infringed); *Mostowfi v. i2 Telecom Int'l, Inc.*, 269 F. App'x 621, 623 (9th Cir. 2008) (upholding dismissal of copyright infringement action where plaintiffs did not own the copyright and thus lacked standing to sue for infringement). Nor does she allege that she registered any relevant copyright with the Copyright Office before filing suit, and on information and belief she has not done so. This too dooms her copyright claim.

### 2.    Trinidad will not prevail on her misappropriation of trade secrets claim

To succeed on a claim for misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024). Trinidad cannot even meet the threshold requirement to establish a violation of the DTSA.

The DTSA defines a "trade secret" as information that "the owner thereof has taken reasonable measures to keep . . . secret" and that "derives independent economic value, actual or potential, from not being generally known to ... another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). "To prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist."

*Nat'l Specialty*, 734 F. Supp. 3d at 929 (cleaned up). "Plaintiffs must clearly refer to tangible trade secret material instead of referring to a system which potentially qualifies for trade secret protection. Plaintiffs may not simply rely upon 'catchall' phrases or identify categories of trade secrets . . . ." *Id.* (cleaned up).

Trinidad does not specifically allege that she owns any trade secrets. She simply conclusorily states that, in conjunction with OpenAI platforms, she "developed proprietary methodologies" (Am. Compl. at 2-3) and that those "protocols and frameworks constitute trade secrets" (Am. Compl. ¶ 24). These catchall phrases do not "clearly refer to tangible trade secret material." *See Nat'l Specialty*, 734 F. Supp. 3d at 929 (dismissing DTSA claim where no tangible trade secrets identified). In fact, the phrases are simply "too broad for the Court—or Defendant[]—to understand what they mean." *Rescue 1 Fin., LLC v. Complete Debt Relief, LLC*, 2023 WL 6373884, at *4 (C.D. Cal. Aug. 24, 2023), *opinion clarified*, 2024 WL 3081923 (C.D. Cal. Jan. 29, 2024). Courts have dismissed trade secret claims where, as here, plaintiffs used broad phrases instead of specifically identifying tangible trade secrets. *See id*. at *3 (dismissing DTSA claim where plaintiff identified trade secrets as "pricing data"; "marketing strategies"; "software data"; "technical data"; and "business processes"); *Sun Hong Foods, Inc. v. Future Best Trading Inc.*, 2023 WL 11197084, at *2 (C.D. Cal. Sept. 29, 2023) (same where trade secrets were identified using "'catchall' phrases and general categories").

Additionally, even if Trinidad does own her purported "protocols and frameworks," she has not established that she took steps to keep those "protocols and frameworks" secret. In fact, she readily admits that she developed those frameworks using the "ChatGPT interface." Am. Compl. ¶¶ 6-7; *see also* Compl. ¶ 2 ("Through a well-documented . . . development initiative conducted directly through Defendant's platforms, Plaintiff developed and tested transformative frameworks"). Such joint development would have required her to *voluntarily* share the information she now alleges is part of her "trade secrets" with OpenAI. And the OpenAI Terms of Use make clear that any input or output from its services may be used by OpenAI. *See* Margo Decl. Ex. A (Terms of Use) at 3 ("We may use Content to provide, maintain, develop, and improve our Services[.]"), *also available at* https://openai.com/policies/terms-of-use/. "If an individual

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                - 5 -                Case No.: 4:25-cv-06328-JST

discloses his trade secret to others who are under no obligation to protect the confidentiality of the information . . . his property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984); *see also, e.g.*, *Hosp. Mktg. Concepts LLC v. Six Continents Hotels, Inc.*, 2016 WL 9045853, at \*5 (C.D. Cal. May 2, 2016) (dismissing misappropriation of trade secret claim where plaintiff "voluntarily disclosed" its trade secrets to defendant); *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D. 551, 562 (N.D. Cal. 1999) (same). That principle applies here and dooms her trade secrets claim.

Given that Trinidad has not properly identified ownership of any trade secrets and that she voluntarily shared her allegedly "proprietary methodologies" with OpenAI, she has no basis for her conclusory claim that OpenAI "misappropriated [her] secrets by monitoring [her] activity for commercial gain, replicating her work in their commercial products." Am. Compl. ¶ 25. She cannot prevail on a misappropriation of trade secrets claim.

3.      Trinidad will not prevail on her unfair business practices claim

California's Unfair Competition Law ("UCL") is not simply a catch-all cause of action that allows plaintiffs to maintain a lawsuit based on any perceived wrongdoing. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200 *et seq*. A UCL claim may be brought by a plaintiff who "suffered injury in fact and . . . lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. To establish standing under the UCL a plaintiff must, among other things, "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . . that is the gravamen of the claim." *Lawther v. One West Bank, FSB*, 2012 WL 298110, at \*23 (N.D. Cal. Feb. 1, 2012). Plaintiff must also demonstrate that she actually relied upon the alleged improper business practice or misrepresentation. *See In re Tobacco II Cases*, 46 Cal. 4th 298 (2009); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at \*6 (N.D. Cal. Sept. 19, 2013) (explaining that California courts have consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations or deception).

Here, Trinidad alleges that OpenAI violated the UCL by purportedly engaging "in a pattern of deception by framing [her] original contributions as its own internal inventions" (Am. Compl. ¶ 27) and engaging "in unfair business practices by deliberately degrading a paid service under a false pretext, misleading [her] about the reasons for service degradation" (*id.* ¶ 28). Neither of these allegations is sufficient to establish standing to bring a UCL claim.

Trinidad has not demonstrated that she suffered any economic injury as a result of OpenAI's purported "deception" about Trinidad's "internal inventions" or from the "degradation" of her paid service. Nor has she demonstrated any actual reliance on OpenAI's purported unfair conduct or misrepresentations. While she generally alleges that OpenAI has derived "immense financial benefit" from use of her work (Am. Compl. at 8), she does not allege that she "lost money" in "reliance on misrepresentations, omissions, or other wrongful conduct" by OpenAI. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1047-48 (N.D. Cal. 2014) (dismissing UCL claim where no allegation of reliance on misrepresentations), *aff'd*, 723 F. App'x 405 (9th Cir. 2018).

Even if Trinidad had standing to bring a UCL claim for unfair business practices, those claims would fail. Trinidad has not included any evidence to support her allegation that OpenAI "deliberately degrad[ed] a paid service" or that it misled her about it. Am. Compl. ¶ 28. Nor can she point to any authority that changing a service constitutes an unfair business practice under the UCL. Like many companies, OpenAI continually improves and changes its services. In fact, its Terms of Service explicitly includes a Disclaimer of Warranties allowing this. Margo Decl. Ex. A at 7 ("We are continuously working to develop and improve our Services. We may update these Terms or our Services accordingly from time to time."); *id.* at 4 ("OUR SERVICES ARE PROVIDED 'AS IS.' EXCEPT TO THE EXTENT PROHIBITED BY LAW, WE . . . DISCLAIM ALL WARRANTIES[.]").

Similarly, Trinidad's claim for "deception" regarding her inventions is baseless and must fail. To establish a deceptive or misleading advertising claim under the UCL, "the plaintiff must show that reasonable consumers are likely to be deceived" by the advertisement or statement. *Garza v. Spectrum Brands Pet LLC*, 760 F. Supp. 3d 1039, 1047 (E.D. Cal. 2024), *appeal dismissed*, 2025 WL 2083193 (9th Cir. May 6, 2025). Dismissal is appropriate where "the

OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION                          - 7 -                          Case No.: 4:25-cv-06328-JST

advertisement itself [makes] it impossible for the plaintiff to prove that a reasonable consumer [is] likely to be deceived." *Id.* at 1048 (citation omitted). "The reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* Here, Trinidad does not identify any publicly facing statement or advertisement from OpenAI that would have likely deceived "a significant portion" of OpenAI's users in such a manner that they would have been misled about anything. Without any allegation of an advertisement or public statement or explanation of why OpenAI's alleged conduct is deceiving, it is "impossible" for Trinidad to prove that a reasonable consumer has been or will be affected by OpenAI's alleged conduct.

### 4.   Trinidad will not prevail on her unjust enrichment claim

An unjust enrichment claim seeks equitable relief. "[E]quitable relief is not appropriate where an adequate remedy exists at law." *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir 2009); *see also Scheibe v. Performance Enhancing Supplements, LLC*, 2023 WL 5444644, at *5 (S.D. Cal. Aug. 23, 2023) (dismissing unjust enrichment claim where plaintiff's other claims sought monetary damages and plaintiff did not plead that he lacked an adequate remedy at law).

Here, Trinidad requests an award of actual and statutory damages, in addition to a number of other remedies. Am. Compl. at 8. And nowhere does she argue that those requested remedies are not adequate to compensate her for her purported harm. *See* Am. Compl. ¶ 30 (merely asserting that OpenAI "has been unjustly enriched" and detailing the purported "value" of the "stolen IP"). As such, her unjust enrichment claim cannot succeed where her other claims clearly fail.

### C.   Trinidad Cannot Demonstrate Likely Irreparable Harm

The Ninth Circuit generally grants injunctions only where plaintiffs provide cognizable evidence "demonstrat[ing] that irreparable injury is *likely* in the absence of an injunction," *Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 22). "[C]onclusory or speculative allegations are not enough." *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (vacating preliminary injunction "[b]ecause [movant] did not produce evidence establishing a likelihood of irreparable harm"); *Herb Reed*, 736 F.3d at 1250 (reversing entry of preliminary injunction "grounded in

platitudes rather than evidence"); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (reversing entry of preliminary injunction where supporting affidavits were "conclusory and without sufficient support in facts"). Plaintiffs are also required to show "a sufficient causal connection between irreparable harm" and the conduct they seek to enjoin such that the injunction would effectively curb the risk of injury. *Perfect 10, Inc. v. Google, Inc.*, 653 F.3d 976, 982 (9th Cir. 2011).

Here, Trinidad's assertions of harm are entirely speculative. First, Trinidad alleges that she will be irreparably harmed in the absence of an injunction preventing OpenAI from conducting "a secondary share sale" because such a sale will render "[a] monetary judgment against OpenAI in the future . . . hollow if the assets derived from the infringement have already been scattered." PI Mot. at 2, 4. As detailed above, Trinidad is not entitled to *any monetary judgment* here because her theories of infringement are baseless. Even if they were not and Trinidad were likely to succeed on the merits, an injunction would still not be appropriate because Trinidad has not explained how share ownership is connected to any potential misappropriation of IP here. Nor has she explained how a sale of shares by employees would deplete the company's coffers at all, much less offered cognizable evidence to demonstrate that OpenAI will be left without adequate funds to compensate her for her purported harms.

Second, Trinidad alleges that she will suffer irreparable harm without an injunction because OpenAI "has engaged in a pattern of altering and destroying evidence." PI Mot. at 4. Trinidad again includes no evidence demonstrating that OpenAI has ever altered or destroyed any evidence. She merely conclusorily states that OpenAI terminated key personnel and "scrub[bed] a damaging admission against interest made by its CEO from a public interview." PI Mot. at 3. But this Court already considered Trinidad's request for an *ex parte* TRO on that basis, and properly denied it. Dkt. 15 at 2 ("The Court finds that the facts that Trinidad offers to establish OpenAI's 'pattern of bad-faith conduct'—that OpenAI allegedly disabled her paid services and fired members of certain of its teams—are insufficient to justify issuance of an ex parte TRO."). Nor is there any demonstrated causal connection between a purported pattern of evidence destruction and a secondary sale of OpenAI shares.

### D.  The Balance of Equities Does Not Tip in Trinidad's Favor

Trinidad has no coherent argument that the balance of equities supports an injunction against a secondary share sale. "[C]ourts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Lilith Games (Shanghai) Co. v. UCool, Inc.*, 2015 WL 5591612, at \*12 (N.D. Cal. Sept. 23, 2015) (quoting *Winter*, 555 U.S. at 24). In doing so, courts balance the injury faced by the applicant for an injunction against the injury that would be sustained by the defendant if relief were granted. *Id.* In *Lilith*, the court found that the balance of equities tipped in the defendant's favor because an injunction would require the defendant to take down its most popular game and would thus threaten its viability as a company. *Id.* The court added that the plaintiff would not face significant harm if the injunction was denied because the plaintiff could "recover significant monetary damages that would compensate it for past harm." *Id.* at \*13.

Here, Trinidad is asking to prevent a secondary share sale that would benefit OpenAI employees and other stakeholders but would not have any impact on the purported copying or dissemination of her alleged intellectual property. Like the plaintiff in *Lilith*, Trinidad would suffer no real harm in the absence of an injunction whereas OpenAI's business as a whole would be affected.

### E.  The Public Interest Does Not Favor an Injunction

If the "impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." *Thompson v. Warden*, 2025 WL 2381793, at \*4 (S.D. Cal. Aug. 15, 2025). The plaintiff bears the "initial burden of showing that the injunction is in the public interest" however, the district court "need not consider public consequences that are 'highly speculative.'" *Olson v. Puckett*, 2023 WL 1883366, at \*35 (E.D. Cal. Feb. 9, 2023).

Here, the potential for public consequences if an injunction is granted is high. Trinidad asks for relief that is irrelevant and disproportionate to her claims, but that will prevent OpenAI employees from engaging in a potentially beneficial transaction. Many people would be made

worse off by a preliminary injunction—employees and others will needlessly be prevented from accessing funds they are entitled to.

On the other side of the ledger, the public will not be harmed if an injunction is not granted. Trinidad's allegations supporting her argument that the injunction is in the public interest are entirely speculative. Trinidad asserts that the public has an interest in protecting "innovators from having their work appropriated" and that an injunction would "send a clear message that the courts" will prevent "powerful entities" from profiting from individuals. PI Mot. at 5. But there is no evidence that OpenAI appropriated any confidential information owned by Trinidad. Trinidad herself admits that the information that is the basis of all her claims was developed using OpenAI's products. So, there is no need for the court to "send a message" here. Nor is there any reason to believe that the broader public would benefit from one.

## IV.    CONCLUSION

For the foregoing reasons, Defendant OpenAI respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction with prejudice.

Dated:  August 20, 2025

Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

*/s/ Benjamin D. Margo*
Benjamin D. Margo
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone:  (212) 999-5800
Facsimile:  (866) 974-7329
Email: bmargo@wsgr.com

*Counsel for Defendant OpenAI, Inc.*