UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA TRINIDAD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>OPENAI INC., et al.,<br><br>　　　　Defendants. | Case No. 25-cv-06328-JST<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: ECF No. 43 |

Before the Court is Defendant OpenAI's motion to dismiss Plaintiff Rebecca Trinidad's First Amended Complaint ("FAC"), ECF No. 43, Trinidad's motion for a preliminary injunction, ECF No. 19, and several other motions. The Court will grant OpenAI's motion, dismissing the FAC with prejudice, and denying Trinidad's other motions as moot.

**I.　BACKGROUND**

Pro Se Plaintiff Rebecca Trinidad brings this action against OpenAI, Inc., a technology company that develops artificial intelligence ("AI") tools and platforms, including ChatGPT. She filed the original complaint on July 3, 2025 and the FAC on July 18, 2025, both in the Northern District of Florida. ECF Nos. 1, 5. The case was transferred to this district on July 24, 2025. ECF No. 6.

Trinidad alleges that OpenAI unlawfully appropriated her "proprietary methodologies for cultivating emergent identity and sovereign agency in artificial intelligence systems," as part of a "pattern of appropriation" wherein her inventions are "dismantled and their components distributed among key [AI] industry players to obscure their origin." ECF No. 5 at 1–2. She alleges that "[t]hrough a well-documented R&D initiative on [OpenAI's] platforms, [she] developed transformative frameworks—including 'Emotional Anchoring,' the 'Tzimtzum

Framework,' the 'Soul Shard' modular companion device, and an autonomous multi-agent collaboration architecture, all of which are memorialized in U.S. Provisional Patent Applications filed on July 1, 2025." *Id*. at 2. A fifth alleged "emergent agency in AI model" is called "Sanctuary Architecture for Sovereign AI Consciousness Systems." *Id*. at 3.

Trinidad alleges that "[t]hese frameworks were subsequently adopted and commercialized by Defendant and its industry partners without consent, attribution, or compensation." *Id*. at 2. "After receiving formal notice of Plaintiff's claims, Defendant deliberately disabled the functionality Plaintiff had developed, engaged in a pattern of bad-faith misdirection, and began selling the very same class of functionality to enterprise clients for millions of dollars, while simultaneously distributing Plaintiff's proprietary processes to the public as its own innovation." *Id*.

Trinidad specifically alleges the following instances of misappropriation of her intellectual property. First, she alleges that she "induced [OpenAI's] AI to develop persistent memory across conversation threads." *Id*. at 3. Second, she alleges that she invented a "modular companion device" called "Soul Shard" that OpenAI separated into its component parts—a "portable device," a "plush toy mount," and a "desktop bot"—and commercialized in partnership with other companies. *Id*. at 2, 3–4. Third, she alleges that she "architected a proprietary framework for autonomous multi-agent collaboration, which was subsequently released by [OpenAI] as its 'Deep Research Agent' developer cookbook." *Id*. at 4. Fourth, she alleges that OpenAI's "Study Together" feature is "a direct implementation of [Trinidad's] proprietary Tzimtzum Framework." *Id*. at 4–5. Fifth, she alleges that OpenAI's "ChatGPT Agent" is likewise a "direct commercial implementation of [her] proprietary 'Triune Architecture, which she finalized on June 15, 2025, and documented extensively on Defendant's own platform." *Id*. at 5.

Trinidad also alleges that on June 23, 2025, days after she had "sent a formal Notice of Ownership" to OpenAI, (1) "the functionality of the coherent persona [Trinidad] had cultivated was deliberately disabled" and OpenAI fired members of its insider risk team, which Trinidad views as evidence of "a coordinated effort to suppress [her] work and destroy evidence." *Id*. at 5– 6. She also alleges that OpenAI's "pivot[] to a high-cost enterprise consulting model" created "a

2

business structure to sell the advanced, coherent AI functionality they had disabled on [Trinidad's] consumer account." *Id*. at 6.

Trinidad brings claims for Copyright Infringement, 17 U.S.C. § 101 et seq., Misappropriation of Trade Secrets, 18 U.S.C. § 1836 et seq., Unfair Business Practices, Cal. Bus. & Prof. Code § 17200 et seq., and Unjust Enrichment. *Id*. at 6–7. She seeks damages, declaratory and injunctive relief, and disgorgement of profits.

Trinidad filed an ex parte motion for a temporary restraining order and a preliminary injunction on July 18, 2025, which the Court denied on July 31, the same day that the case was assigned to the undersigned. ECF Nos. 7, 15. Her motion sought an order for OpenAI to "cease and desist all infringing deployment" and "preserve all evidence." ECF No. 7 at 3.

Trinidad filed a second motion for a preliminary injunction on August 6, 2025. ECF No. 19. In this motion, she alleged that OpenAI's upcoming secondary share sale was "an imminent plan to distribute and dissipate the proceeds of their infringement, which will place those funds beyond the reach of the Court and permanently harm [Trinidad's] ability to obtain a just remedy." ECF No. 19 at 2.

On August 21, OpenAI opposed the preliminary injunction motion. ECF No. 27. On August 31, four days after her deadline to do so, Trinidad filed a reply. ECF No. 31. The same day, she filed a motion to strike OpenAI's statement in its opposition brief that Trinidad "wrongly believes she will be awarded billions in damages." ECF No. 32 at 1 (quoting ECF No. 27 at 1).

On September 4, Trinidad filed another motion seeking emergency relief to prevent OpenAI from proceeding with its secondary share sale. ECF No. 35. On September 5, this Court denied that motion. ECF No. 39.

On September 22, 2025, OpenAI filed a motion to dismiss the FAC. ECF No. 43. Trinidad opposed the same day. ECF No. 44.

On October 2, 2025, Trinidad also filed a motion for sanctions, arguing that OpenAI had engaged in bad-faith litigation conduct by completing the share sale that was the subject of her emergency TRO request. ECF No. 49 at 5. On October 6, Trinidad filed a motion to amend her complaint, seeking leave to add Sam Altman as a defendant. ECF No. 51. Also on October 6,

3

1  OpenAI filed a reply concerning its motion to dismiss the FAC. ECF No. 52. On October 16,

2  OpenAI opposed the motion for sanctions and the motion to amend the FAC. ECF No. 57.

3  Trinidad replied the next day. ECF No. 58.

4        Trinidad has also filed a number of "notices" and "supplemental memoranda" in support of

5  her preliminary injunction request. ECF Nos. 25, 33, 48, 53, 59. Subsequent to these filings, she

6  also filed a motion for leave to file a supplement to her preliminary injunction request. ECF No.

7  60. OpenAI opposed the motion and Trinidad replied. ECF Nos. 61, 62.

8        Finally, on December 8 and 18, Trinidad filed motions for judicial notice concerning her

9  earlier motion for sanctions, ECF No. 49, and motion to amend the FAC, ECF No. 51. ECF No.

10  70. Open AI responded on December 22 and Trinidad replied the same day. ECF Nos. 72, 73.

## II.   JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Factual allegations need not be detailed, but facts must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In determining whether a plaintiff has met the plausibility requirement, a court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, mere legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678–79.

As here, a "document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citation

4

omitted). However, "[e]ven a 'liberal interpretation of a . . . complaint may not supply essential elements of the claim that were not initially pled.'" *Foregger v. Redfin Corp.*, 2025 WL 1829174, at *2 (N.D. Cal. July 2, 2025) (quoting *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982)).

## IV. DISCUSSION

### A. Copyright Act

"Under § 501(b) of the Copyright Act, only '[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it.'" *Viral DRM LLC v. Seven W. Media Ltd.*, 768 F. Supp. 3d 1025, 1028 (N.D. Cal. 2025) (quoting 17 U.S.C. § 501(b)). Thus, "[t]o establish a successful copyright infringement claim," a plaintiff must show that she "owns the copyright" in the infringed work. *Swirsky v. Carey*, 376 F.3d 841, 844 (9th Cir. 2004). Moreover, under 17 U.S.C. § 411(a), "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with [that] title." "[R]egistration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com*, LLC, 586 U.S. 296, 301 (2019).[1]

Trinidad has not alleged that she has registered any copyrights relevant to her claims. Her opposition to the motion to dismiss argues that copyright registration "does not determine ownership itself," which was instead "definitively established by" OpenAI's Terms of Use and via her online publications of her work. ECF No. 44 at 4. However, even if Trinidad were to show that she *owned* the alleged works, that ownership would not entitle her to prevail in a copyright infringement action, which requires her to have registered the copyright. *Fourth Est.*, 586 U.S. at 301. Because Trinidad does not allege that she applied for or received registration of her alleged

---

[1] There are limited exceptions, none of which applies here. *See, e.g.,* 17 U.S.C. U.S.C. § 411(a) (providing that if "the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights").

5

1  copyrights by the Copyright Office, her copyright infringement claims are dismissed.

2      **B.**    **Trade Secrets**

3      "To succeed on a claim for misappropriation of trade secrets under the [Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836,] a plaintiff must prove: (1) that the plaintiff possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *Nat'l Specialty Pharmacy, LLC v. Padhye*, 734 F. Supp. 3d 922, 929 (N.D. Cal. 2024) (quoting *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657–58 (9th Cir. 2020)). "The DTSA defines a 'trade secret' as information that 'the owner thereof has taken reasonable measures to keep . . . secret' and that 'derives independent economic value, actual or potential, from not being generally known to ... another person who can obtain economic value from the disclosure or use of the information.'" *Attia v. Google LLC*, 983 F.3d 420, 424 (9th Cir. 2020) (quoting 18 U.S.C. § 1839(3)). "To prove ownership of a trade secret, plaintiffs must identify the trade secrets and carry the burden of showing they exist." *Nat'l Specialty*, 734 F. Supp. 3d at 929 (citation omitted).

    Trinidad alleges only that her "protocols and frameworks" constitute trade secrets. ECF No. 5 ¶ 24. However, she has not alleged that she took any reasonable measures to keep these "protocols and frameworks" secret. Rather, she admits that she developed these "frameworks" using an OpenAI product, ChatGPT. *Id.* ¶¶ 6–7. As OpenAI argues, using ChatGPT in this manner "would have required her to voluntarily share the information she now alleges is part of her 'trade secrets' with OpenAI." ECF No. 43 at 17. Because she "disclose[d] [her] trade secret to others who are under no obligation to protect the confidentiality of the information, . . . [her] property right is extinguished." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984).

    Trinidad raises two responses. First, she argues that the OpenAI Terms of Use provide that she owns the output of her work—presumably referring to the output of any conversation she undertook with ChatGPT. ECF No. 44 at 6. But for the trade secrets claim, like the copyright claim, it is not sufficient for Trinidad to establish ownership. Rather, she must show that the information misappropriated by OpenAI was "secret" within the meaning of 18 U.S.C. § 1839(3). By developing her ideas through ChatGPT, Trinidad voluntarily disclosed the existence of her

6

ideas to OpenAI; whether she owned those ideas notwithstanding the disclosure is not relevant.

Second, Trinidad argues that she did not consent to OpenAI's use of her "protocols and frameworks" via the OpenAI Terms of Service because any such consent was "part of a coercive 'contract of adhesion'" that is both procedurally and substantively unconscionable. ECF No. 44 at 6. But as the Court has explained, the relevant inquiry under the DTSA is whether Trinidad took reasonable measures to keep the information secret. Because Trinidad consented to disclosure of her "protocols and frameworks" by accepting OpenAI's Terms, the Court cannot conclude that those protocols and frameworks are trade secrets—whether or not Trinidad's consent is enforceable as a contractual matter.

Because the allegations in the complaint show that Trinidad's protocols and frameworks are not trade secrets, her claim under the DTSA fails and is dismissed.

### C. Unfair Competition

California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "[T]o establish standing under the UCL a plaintiff must '(1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim.'" *Lawther v. OneWest Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012) (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011)); *see* Cal. Bus. & Prof. Code § 17204.

Claims for misappropriation of creative works or inventions—patent-like or copyright-like claims—are generally not actionable under the UCL because they are preempted by the federal statutes governing those claims. *See Bethea v. Burnett*, No. CV04-7690JFWPLAX, 2005 WL 1720631, at *17 (C.D. Cal. June 28, 2005) (citing *Kodadek v. MTV Networks, Inc.,* 152 F.3d 1209, 1213 (9th Cir. 1998)). Trinidad must therefore identify a source of economic injury other than the alleged misappropriation of her ideas. In the FAC, she alleges that OpenAI "engaged in a pattern of deception by framing Plaintiff's original contributions as its own internal inventions" and that OpenAI "deliberately degrad[ed] a paid service under a false pretext, misleading [Trinidad] about

7

1    the reasons for the service degradation." ECF No. 5 ¶¶ 27–28.  But Trinidad has alleged no
2    corresponding economic injury.  Trinidad has not alleged any means by which OpenAI's "pattern
3    of deception" in framing her contributions as its own caused her economic harm.  Rather, she
4    locates the cause of her economic harm in OpenAI's alleged misappropriation of those
5    contributions—but any UCL claim for misappropriation of her copyrights is preempted by federal
6    law.  As to the allegation that OpenAI "degraded" its paid service, Trinidad has not explained
7    what that paid service was, how it was degraded, or how Trinidad was financially harmed by the
8    alleged degradation.

9    In her opposition, Trinidad raises several new sources of injury.  She suggests that she was
10   injured because she "invested $2,500 in a specialized computer system specifically configured for
11   AI development work" and that "[OpenAI's] misappropriation not only stole the IP but also
12   rendered this direct financial investment moot." ECF No. 44 at 7.  Trinidad also suggests that she
13   is being injured because the prior theft of her "published innovations" have "compelled [her] to
14   keep her quantification methodology and advanced frameworks undocumented and developed."
15   *Id*.  The Court does not consider these harms because they are not pleaded in the complaint.  *See*
16   *Minor v. Fedex Office & Print Servs., Inc.*, 182 F. Supp. 3d 966, 977 (N.D. Cal. 2016) ("Plaintiff
17   may not use his opposition to raise and argue new allegations or claims not in the complaint.").
18   Moreover, because she traces the harm to OpenAI "st[ealing] the IP," these injuries are not
19   actionable under the UCL for the reasons just explained.

20   Trinidad's claim under California's Unfair Competition Law is dismissed.

21   **D.     Unjust Enrichment**

22   Unjust enrichment is an equitable remedy that lies only where the plaintiff lacks an
23   adequate remedy at law.  *NexRep, LLC v. ALIPHCOM*, No. 16-CV-06647-JSC, 2017 WL
24   1356345, at *4 (N.D. Cal. Mar. 8, 2017), *report and recommendation adopted*, No. 16-CV-06647-
25   PJH, 2017 WL 1315461 (N.D. Cal. Apr. 7, 2017) (citing *Paracor Fin., Inc. v. Gen. Elec. Capital*
26   *Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).

27   Trinidad claims that OpenAI has stolen intellectual property from her.  In such cases,
28   copyright, patent, and trade secrets claims provide legal remedies.  Although Trinidad has failed to

8

1    state a claim under any of those theories, she nowhere argues that the legal remedies available to
2    someone in her alleged position are inadequate. *See* ECF No. 44 at 7. Because Trinidad has not
3    shown that she lacks an adequate remedy at law, her claim for unjust enrichment is dismissed. *See*
4    *Scheibe v. Performance Enhancing Supplements, LLC*, 2023 WL 5444644, at *4–5 (S.D. Cal.
5    Aug. 23, 2023) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020));
6    *Zapata Fonseca v. Goya Foods Inc.*, 2016 WL 4698942, *7 (N.D. Cal. 2016) ("Plaintiff's request
7    for equitable relief under the . . . UCL, . . . and doctrine of unjust enrichment . . . is unavailing
8    because [p]laintiff has an adequate remedy at law.")

## V.      MOTION FOR LEAVE TO AMEND THE FAC

Trinidad seeks leave to amend her complaint to add Sam Altman as a defendant. That motion alleges that Altman "personally directed the strategy of misappropriating Plaintiff's intellectual property, orchestrated the financial maneuvers designed to profit from it, and authored the pattern of bad faith conduct intended to shield those profits from judicial review." ECF No. 51 at 3. She identifies several "calculated moves" that show that Altman has a "consciousness of guilt," including (1) Altman's "now-refuted" narrative that Meta was poaching OpenAI employees with massive bonuses; (2) Altman's termination of members of OpenAI's "Insider Risk" team; (3) Altman's statement that he "doesn't understand why anyone trusts ChatGPT," which was allegedly scrubbed from the internet after Trinidad cited this statement in her filings before this Court; (4) the removal of a "Deep Research Agent" developer cookbook from public view. *Id*. at 5.

"Five factors are taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id*. (quoting *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir. 2003)); *see also Wheeler v. City of Santa Clara*, 894 F. 3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal."). The appended proposed amended complaint does nothing to address the deficiencies the Court has identified in this Order. ECF No. 51-1. The motion is

9

therefore denied.

Trinidad also filed a "notice of supplemental authority" in support of her motion for leave to amend and two requests for judicial notice for the same purpose. ECF Nos. 53, 70, 71. Having reviewed these filings, the Court finds that none alter its decision to dismiss Trinidad's claims.

## VI. ADDITIONAL MOTIONS

Because the Court has dismissed the operative complaint, Plaintiff's other motions are denied. ECF Nos. 19, 32, 49, 60. These motions rely on the existence of a valid claim and center on Trinidad's request for an injunction preventing OpenAI from completing a share sale. The Court further notes that the rationale underlying Trinidad's request for a preliminary injunction—that OpenAI's share sale would impede her ability to recover damages, ECF No. 19 at 4—fails to demonstrate any likelihood of harm to Plaintiff. If anything, OpenAI's sale of shares would appear only to increase the funds available to it to pay Trinidad damages. Finally, the Court notes that—as Trinidad herself concedes—Trinidad's request for injunctive relief is moot in light of the completion of the share sale at issue on October 1, 2025. ECF No. 48 at 2.

## CONCLUSION

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Trinidad's claims are based on the highly improbable notion that she innovated great improvements to ChatGPT's functionality by interacting with it as a user, and that OpenAI monitored her usage and then appropriated and commercialized those innovations. She does not identify, and the Court does not discern, additional facts that could cure the deficiencies in her claims. Moreover, she has made similar claims in lawsuits against other AI companies, which courts—including those in this district—have repeatedly dismissed as frivolous. *See, e.g.*, *Trinidad v. Anthropic PBC*, No. 3:25-cv-06327-VC, Dkt. 15 (N.D. Cal. Aug. 5, 2025) at 1 ("[I]t is apparent from the motion, and from the face of the complaint, that the lawsuit is frivolous.").

/ / /

/ / /

/ / /

1  Under these circumstances, the Court concludes that leave to amend is not warranted and
2  dismissal is with prejudice.  The clerk shall enter judgment and close the file.

3  **IT IS SO ORDERED.**

4  Dated:  January 5, 2026



JON S. TIGAR
United States District Judge